```
 1  KAREN P. HEWITT
    United States Attorney
 2  CAROLINE P. HAN
    Assistant U.S. Attorney
 3  California State Bar No. 250301
    United States Attorney's Office
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Phone: (619) 557-5220
    Fax: (619) 235-2757
 6  E-mail: caroline.han@usdoj.gov

 7  Attorneys for Plaintiff
    United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUBEN NAVARRO-MALDONADO (1), <br><br>Defendant. | Criminal Case No. 07CR2883-1-JAH<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) TO COMPEL SPECIFIC DISCOVERY**<br><br>**(2) FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**(3) PRESENT EVIDENCE BASED UPON ENTRAPMENT AND MENTAL CONDITION**<br><br>Date:  March 10, 2008<br>Time:  8:30 a.m.<br>Court: The Hon. John A. Houston |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motions to Compel Specific Discovery, for Leave to File Further Motions, and to Present Evidence of Entrapment and Mental Condition.  This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

//

//

//

**I**

**STATEMENT OF FACTS**

In the summer of 2007, Drug Enforcement Administration (DEA) agents initiated an investigation of the defendant, Ruben Navarro-Maldonado. On August 30, 2007, September 7, 2007, and September 20, 2007, a confidential source (hereinafter "CS"), employed by the DEA, arranged for the defendant to meet with DEA agents acting in an undercover capacity on three separate occasions. During those meetings, the defendant sold 178.8 grams of methamphetamine (actual) to DEA agents acting in an undercover capacity. All of these meetings were audiotaped, and the transcripts will be provided to the Court.

On October 4, 2007, the CS set up another meeting with the defendant. Throughout the day, the defendant and the CS were in communication via telephone and DEA agents maintained surveillance of the defendant. During one of those telephone conversations, the defendant stated that he was going to meet his source of supply and meet with the CS after. Most of these telephone conversations were audiotaped as well. DEA agents observed the defendant meet with co-defendant Ortiz-Wense. Thereafter, the defendant met with the CS and attempted to sell the CS approximately 76.2 grams of methamphetamine (actual). Both defendants were subsequently arrested.

Both defendants were advised of their Miranda rights, and waived those rights. Among other things, Defendant Ortiz-Wense stated that he had purchased the ten ounces of methamphetamine on the street, and defendant Navarro-Maldonado stated that he had been given the drugs by Ortiz-Wense on consignment.

**II**

**MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE**

To date, the Government has provided the defendant with 245 pages and 26 compact discs. In addition, when defense counsel contacted the Government in January to request additional copies of the compact discs that had been provided because the provided discs were faulty, Government counsel asked defense counsel to let Government counsel known which discs defense

1  counsel was missing and that the Government would gladly provide additional copies. Defense
2  counsel did not provide the information about the faulty discs until February 26, 2008. Since then,
3  the Government has requested that new copies of the requested discs be made and will ensure that
4  the discs are provided to counsel as soon as they are available.

5  With respect to Defendant's discovery motions, the Constitution requires the Government
6  to preserve evidence "that might be expected to play a significant role in the suspect's defense."
7  California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government,
8  such evidence must (1) "possess an exculpatory value that was apparent before the evidence was
9  destroyed," and (2) "be of such a nature that the Defendant would be unable to obtain comparable
10 evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d
11 1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it
12 deems to be relevant and material to this case. Any failure to gather and preserve evidence,
13 however, would not violate due process absent bad faith by the Government that results in actual
14 prejudice to the Defendant. See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v.
15 Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir.
16 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

17

18 **(1) Defendant's Statements** – The Government recognizes its obligation, under Rules
19 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements
20 and Defendant's written statements. (Unless otherwise noted, all references to "Rules" refers to
21 the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's
22 statements that are known to the undersigned Assistant U.S. Attorney at this date. If the
23 Government discovers additional oral or written statements that require disclosure under Rule
24 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to Defendant.

25 **(2) Defendant's Prior Record** – The Government has no known criminal record.
26 Consequently, the Government has fulfilled its duty of discovery under Rule 16(a)(1)(D). See
27 United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government
28

1  determines that there are any additional documents reflecting Defendant's prior criminal record,
2  the Government will provide those to Defendant.

3  **(3)  Tangible Objects** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.  The Government need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).   In addition, upon reasonable notice, the Government will provide the Defendant with an opportunity to view and photograph, but not weigh, the contraband related to this case.

In addition to a request to examine tangible items which are in the Government's possession and are material to the preparation of the defense or the Government intends to use at trial, the Defendant has made a blanket request for all books, papers, and documents that are in the possession, custody, or control of the Government which are material to the preparation of the defense.  This blanket request is unwarranted.  The Government has provided the Defendant will all documentation in the Government's possession as required by Rule 16 except as noted herein. As such, the Defendant's motion should be denied.

Finally as part of this blanket request, the Defendant has also included a request for copies of all search warrants and accompanying affidavits. The Government has provided the defendant with a copy of all search warrants and accompanying affidavits pertaining to this case.  The defendant has requested the opportunity to inspect the "results" of the execution of the search warrants.  The tangible objects recovered from the execution of the search warrants in the Government's possession  will be made available for inspection by the Defendant as discussed above.

**(4)  Expert Witnesses** – The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States

1  intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules
2  of Evidence no later than two weeks prior to trial.
3      **(5)** **Brady Material** – The Government has and will continue to perform its duty
4  under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or
5  evidence favorable to Defendant  when such evidence is material to guilt or punishment.   The
6  Government recognizes that its obligation under Brady covers not only exculpatory evidence,
7  but also evidence that could be used to impeach witnesses who testify on behalf of the United
8  States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473
9  U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by
10 the defense.  Bagley, 473 U.S.  at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).
11 "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable
12 probability that, had the evidence been disclosed to the defense, the result of the proceeding
13 would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).
14 The final determination of materiality is based on the "suppressed evidence considered
15 collectively, not item by item."  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).
16     Brady does not, however, mandate that the Government open all of its files for
17 discovery.  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).
18 Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or
19 inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2)
20 evidence available to the Defendant from other sources (see United States v. Bracy, 67 F.3d
21 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the Defendant already possesses (see United
22 States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir.
23 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be
24 imputed to have knowledge or control over.  See United States v. Hanson, 262 F.3d 1217,
25 1234-35 (11th Cir. 2001).    Brady does not require the United States "to create exculpatory
26 evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980),
27 but only requires that the Government "supply a Defendant with exculpatory information of
28 which it is aware."  United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

1    **(6) Arrest Reports, Notes, and Dispatch Tapes** – The Government has provided
2    Defendant with all known reports related to Defendant's arrest in this case. The Government is
3    not aware of the existence of any dispatch tapes relevant to this case. The Government will
4    continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

5    The Government has no objection to the preservation of the agents' handwritten notes.
6    See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their
7    original notes of interviews of an accused or prospective government witnesses). However, the
8    Government objects to providing Defendant with a copy of the rough notes at this time. The
9    Government is not required to produce the notes pursuant to the Jencks Act because the notes
10   do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise
11   both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or
12   adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The
13   notes are not Brady material because, as discussed further, the notes do not present any
14   material exculpatory information or any evidence favorable to Defendant that is material to
15   guilt or punishment. If, during a future evidentiary hearing, certain rough notes become
16   particularly relevant, the notes in question will be made available to Defendant.

17   **(7) Evidence Seized** – The Government has complied and will continue to comply
18   with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to
19   examine, inspect, and copy all evidence seized that is within its possession, custody, or control,
20   and that is either material to the preparation of Defendant's defense, or is intended for use by
21   the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to
22   Defendant.

23   **(8) Government Communication to Defendant** – The Government is unaware of any
24   communications between government agents, informers or anyone else acting at the direction
25   of the Government and the Defendant.

26   **(9) Witness Statements** – The Government is aware of its obligation to provide witness
27   statements to the Defendant where relevant, and will do so at the appropriate time.

28

1      **(10) Statements of Individuals Who Will Not be a Witness**– The Government objects to the Defendant's request for all statements made by individuals who may have information relevant to the case who the government does not intend to call as a witness.  The Government is not responsible for all possible information and evidence regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(11)  Informants and Cooperating Witnesses** – At this time, the Government is aware of a confidential source or informant involved in this case.  The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro.  See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997).  Because there is a confidential informant involved with this case, the Government will disclose the identity of the informant no later than two weeks prior to trial.

**(12)  Bias by Informants or Cooperating Witnesses** – Because there is a confidential informant in this case, the inducements, favors, payments or threats made (if any) or any other Giglio information related to the confidential informant or cooperating witness will be provided to Defendant no later than two weeks prior to trial.

**(13) Electronic Surveillance** – The Government is unaware of any electronic surveillance logs or transcripts concerning the Defendant or any witness.  All audiotape recordings of in person and phone conversations that have been made in connection with this case and are in the Government's possession were turned over to the Defendant on November 7, 2007.

**(14)  Information That May Result in a Lower Sentence Under the Guidelines** – The Government has provided and will continue to provide Defendant with all Brady material

1   that may result in mitigation of Defendant's sentence. Nevertheless, the Government is not
2   required to provide information bearing on Defendant's sentence until after Defendant's
3   conviction or guilty plea and prior to her sentencing date. See <u>United States v. Juvenile Male</u>,
4   864 F.2d 641, 647 (9th Cir. 1988) (no <u>Brady</u> violation occurs "if the evidence is disclosed to
5   the Defendant at a time when the disclosure remains in value").

6       **(15)  404(b) Evidence** – The Government will disclose in advance of trial the general
7   nature of any "other bad acts" evidence that the United States intends to introduce at trial
8   pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence
9   under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence
10  concerning the crime charged are "inextricably intertwined." See <u>United States v. Soliman</u>,
11  812 F.2d 277, 279 (9th Cir. 1987).

12      **(16)  Evidence of Bias or Motive to Lie** – The Government recognizes its obligation
13  under <u>Brady</u> and <u>Giglio</u> to provide evidence that could be used to impeach Government
14  witnesses including material information regarding demonstrable bias or motive to lie.

15      **(17)  Impeachment Evidence** – As previously discussed, the Government recognizes
16  its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to
17  impeach Government witnesses.

18      **(18)  Evidence of Criminal Investigation of Any Government Witness** – As noted
19  above, the Government objects to providing any evidence that a prospective witness is under
20  criminal investigation, but will provide the conviction record, if any, which could be used to
21  impeach all witnesses the Government intends to call in its case-in-chief.

22      **(19) Witness Addresses** – The Government has already provided Defendant with the
23  reports containing the names, work addresses, and telephone numbers of the special agents
24  involved in this case. In its trial memorandum, the Government will provide Defendant with a
25  list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a
26  witness list is not required. See <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United</u>
27  <u>States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). The Government strenuously objects to
28  providing the home addresses to Defendant. In non-capital cases, the Government is not even

1  required to disclose the names of its witnesses prior to trial. United States v. Dishner, 974 F.2d
2  1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985));
3  United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa,
4  904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny Defendant
5  access to government witnesses whose telephone numbers and addresses the government
6  refused to provide because Defendant knew the identities of the government witnesses and
7  presumably knew their telephone numbers or could have contacted them through the exercise
8  of due diligence). In addition, the Government objects to providing the names and addresses of
9  witnesses that the Government will not call as witnesses without a showing from the defendant
10 that the information would be relevant and material to his defense.

11 **(20) Name of Witnesses Favorable to the Defendant** – The Government is not aware
12 of the names of any witnesses favorable to the Defendant's case. If the Government discovers
13 any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

14 **(21) Jencks Act Material** – Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500,
15 into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a
16 Government witness has testified on direct examination, the Government must give the
17 Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that
18 was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C.
19 §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the
20 witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim,
21 contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by
22 the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see
23 whether or not the government agent correctly understood what the witness was saying, that act
24 constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell,
25 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

26 **(22) Giglio Information and Agreements Between the Government and Witnesses**
27 An agreement that the Government makes with a witness for testimony in exchange for money
28 or in exchange for favorable treatment in the criminal justice system is generally subject to

1  disclosure as impeachment evidence under Brady and Giglio.  See United States v. Kojayan, 8

2  F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).

3  As stated above, the Government will provide any Giglio information in connection with this

4  case no later than two weeks prior to trial.

5  **(23) Agreements Between the Government and Witnesses** – As noted above,

6  Government will provide any such information no later than two weeks prior to trial.

7  **(24) Report of Scientific Tests or Examinations** – The Government has provided the

8  defendant with results of the Drug Enforcement Administration laboratory tests on the

9  narcotics seized in this case in accordance with Rule 16(F).  The Government will also provide

10 Defendant with any further scientific tests or examinations.

11 **(25) Defense Request to Perform Own Scientific Analysis on Recorded**

12 **Conversations** – The Defendant has made this request without stating any reason why the

13 recorded conversations in this case, which have been provided to the Defendant, require

14 scientific analysis.  Moreover, the Defendant has not stated any reason why he should be given

15 to the original recordings of the recorded conversations in this case.  As such, there appears to

16 be no reason for this request and the request should be denied.

17 **(26) Defense Request for Statements by Unindicted Co-Conspirators or Co-**

18 **Defendants** – The Government has provided the Defendant with all statements made by co-

19 defendant Ortiz Wense in relation to this case which that are known to the Government.  In

20 addition, the Government is unaware of any known unindicted co-conspirators.

21 **(27) Motion to Reproduce Inaudible Compact Discs and Produce Available**

22 **Transcripts** – As discussed above, the Government is in the process of complying with the

23 Defendant's request for reproduction of the compact discs, and expects to be able to comply

24 with the request prior to the next court appearance.

25 **(28)   Residual Request** – The Government has already complied with Defendant's

26 residual request for prompt compliance with Defendant's discovery requests.

27

28

## III

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

## IV

## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

### (1) All Evidence That Defendant Intends To Introduce In His Case-In-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

### (2) Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a

reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

V

**DEFENDANT'S INTENT TO PRESENT EVIDENCE REGARDING DEFENDANT'S MENTAL CONDITION**

The Defendant has served notice regarding his intent to present evidence in support of a defense based upon insanity and/or introduce expert testimony relating to the issued of a mental disease, defect, or other condition. His notice further stated that the Defendant was under the influence of methamphetamine on or about the dates as charged in the indictment.

In order for a Defendant to establish an insanity defense, the Defendant must establish the defense by clear and clear and convincing evidence. 18 U.S.C. §17. In addition, he must also demonstrate (1) that he suffered from a serious mental disease or defect during the commission of the offense; and (2) that the "mental disease or defect prevented him from appreciating the nature and quality or the wrongfulness of his acts." Id.

In this case, there is no evidence that the Defendant suffered from a serious mental disease during the commission of any of the offenses with which he is charged. The defendant is charged with three different sales and one attempted sale of methamphetamine to DEA agents. In order to set up those sales and the attempted sale, the Defendant had to make several phone calls with DEA agents and the confidential source. In addition, he had to make arrangements to get methamphetamine from his source of supply, and then meet to sell that methamphetamine to the DEA agents. Many of the phone calls between the defendant and the DEA agents and/or the confidential source, as well as the actual meetings and sales are audiotaped. In all of these instances, there is no indication that the defendant is under the influence of methamphetamine or any other drug. However, the Court need not accept Government counsel's opinion on its face. The Government will gladly provide the Court with a copy of the translated transcripts of the phone calls and meetings so that the Court can also make this determination. Based upon the phone calls and meetings, there is no factual basis for

the defendant's assertion that he was actually under the influence of methamphetamine during all of these incidents.

In addition, while the Defendant may have consumed methamphetamine or other narcotics at some point during the time that he sold and attempted to sell methamphetamine, his voluntary intoxication does not constitute insanity. United States v. Knaught, 894 F.2d 1119, 1121-22 (9th Cir. 1990). And while the Defendant may seek to argue that his voluntary intoxication led him to have a lack of knowledge or intoxication, the Government urges the Court to read the transcripts that the Government will provide and find that no factual basis exists to support this defense in that there is no indication that he was indeed under the influence of methamphetamine or any other drug during these transactions. Thus, the Defendant should be precluded from introducing this evidence.

## VI

### DEFENDANT'S INTENT TO PRESENT EVIDENCE OF ENTRAPMENT

The defendant has served notice that he intends to present evidence that a Government agent acted to entrap the Defendant. In support of his notice, the Defendant states that he is an honorable businessman who has been a "responsible, respected businessman in the city of Escondido." Therefore, he must be the victim of entrapment in relation to the offenses with which he is charged. However, this assertion must also be seen in light of the assertion about his use of methamphetamine during the commission of the charged offense as discussed above.

Entrapment has a two prong test: (1) Was the offense induced by a government agent?; and (2) Was the defendant predisposed to commit the offense?. Sorrells v. United States, 287 U.S. 435 (1932). In this case, a government agent did contact the Defendant about purchasing methamphetamine. However, the agent contacted the Defendant based upon a referral by a man named Daniel Delgado-Martinez.

The issue of whether or not the Defendant was predisposed to commit the crime requires the Court to consider several issues, namely, (1) the defendant's character or reputation; (2) whether the Government made the initial suggestion of criminal activity; (3)

whether the defendant engaged in the criminal activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the Government's inducement.  United States v. Bonanno, 852 F.2d 434 (9th Cir. 1988).

The most important factor in making this determination is the reluctance, if any, the Defendant showed when presented with the opportunity. Id. In this case, when the confidential source, acting on behalf of the DEA, contacted the Defendant, the Defendant readily talked quantities with the confidential source after first asking the confidential source about how the confidential source had come to know about the Defendant.  While the Defendant may have exhibited reluctance, the reluctance was not a reluctance to engage in the transactions, but merely a cautiousness to confirm the confidential source's identity before agreeing to sell the methamphetamine to the confidential source and the DEA agents.

In addition, it is clear from the audiotapes of the conversations and from agent observations that the Defendant was paid for the sales and was to profit from the sales.  This is evidenced by the negotiations in which the Defendant engaged about the price of the methamphetamine.  As such, the Defendant's predisposition is evidenced by his motive in the profit associated with his crimes.

Moreover, it is important to note that the Defendant did not simply engage in a single transaction.  Instead, he sold three quantities of methamphetamine to DEA agents, and attempted to sell a fourth quantity of methamphetamine on agents on the day he was arrested. Based upon these facts, his predisposition to commit the crime is clear.  As such, the Defendant should be precluded from presenting evidence in support of a defense of entrapment.

## VII

## **CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: March 3, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/**Caroline P. Han**
CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2883-1-JAH |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| RUBEN NAVARRO-MALDONADO (1), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Christian De Olivas**
De Olivas Law Firm APLC
200 N Bradford Avenue, Suite L
Placentia, CA 92870
(714)646-3314
Fax: (714)646-3721
Email: christian@deolivaslaw.com

Attorney for defendant Navarro-Maldonado

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 3, 2008.

                                                                          /s/ **Caroline P. Han**
                                                                          CAROLINE P. HAN